IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS SINATRA<br>444 E 264st St<br>Euclid, OH 44132<br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>BULTEN NORTH AMERICA LLC<br>10069 Wellman Road<br>Streetsboro, OH 44241<br><br>　**Serve also:**<br>　CORPORATION SERVICE<br>　COMPANY<br>　Statutory Agent<br>　1160 Dublin Road, Suite 400<br>　Columbus, OH 43215<br><br>　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br>**COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff, Nicholas Sinatra, by and through undersigned counsel, as his Complaint against Defendant, states and avers the following:

## PARTIES

1. Sinatra is a resident of the city of Euclid, county of Portage, state of Ohio.

2. Bulten North America LLC ("Bulten") is a foreign limited liability company whose principal place of business is located at 10069 Wellman Road, Streetsboro, OH 44241.

## JURISDICTION & VENUE

3. Bulten hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over Bulten comports with due process.

4. This cause of action arose from or relates to the contracts of Bulten with Ohio residents, thereby conferring specific jurisdiction over Bulten.

5. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Sinatra's state law claims because those claims derive from a common nucleus of operative facts.

6. Venue is proper in this District because the wrongs herein alleged occurred in this District.

## FACTS

7. Sinatra is a former employee of Bulten.

8. Bulten hired Sinatra on or about September 16, 2024.

9. Bulten employed Sinatra in the position of Purchasing/Planner.

10. Beginning in or around September 2024, Sinatra verbally reported violations of Sarbanes-Oxley (SOX) to Managing Director Chad Squires.

11. Sinatra reasonably believed Bulten was violated SOX.

12. Beginning in or around September 2024, Sinatra verbally reported violations of General Accepted Accounting (GAAP) to Managing Director Chad Squires ("GAAP Violations").

13. Sinatra reasonably believed Bulten violated GAAP.

14. Averments 10 and 11 collectively refer to "Bulten's First Violations."

15. Bulten's First Violations included inaccurate standard costs for goods on Bulten's balance sheet.

16. Bulten's First Violations included discrepancies in Bulten's inventory inaccurately reflected on Bulten's Work in Progress documentation.

17. Bulten's First Violations included Bulten asking Sinatra to sign off on documentation for deliveries that arrived before Bulten employed Sinatra.

18. Bulten's First Violations included Bulten asking Sinatra to sign off on deliveries that were delivered to the incorrect facility.

19. Sinatra reported Bulten's First Violations to Engineer Bill Trader.

20. Sinatra reported Bulten's First Violations to MP&L Manager Michael Helena.

21. Sinatra reported Bulten's First Violations to Quality Electra Floasiu.

22. Sinatra reported Bulten's First Violations to Finance Robert Brown.

23. Bulten dismissed Sinatra's report of Bulten's First Violations.

24. An investigation should include interviewing the complainant.

25. An investigation should include interviewing the subject of the complaint.

26. An investigation should include interviewing the subject of the reported violations.

27. An investigation should include interviewing witnesses to the reported violations.

28. An investigation should include getting a written statement from the complainant.

29. An investigation should include getting a written statement from the subject of the complaint.

30. An investigation should include getting a written statement from the subject of the reported violations.

31. In response to Sinatra's report of Bulten's First Violations, Defendants did not interview Sinatra.

32. In response to Sinatra's report of Bulten's First Violations, Defendants did not interview Floasiu.

33. In response to Sinatra's report of Bulten's First Violations, Defendants did not interview Trader.

34. In response to Sinatra's report of Bulten's First Violations, Defendants did not interview Helena.

35. In response to Sinatra's report of Bulten's First Violations, Defendants did not interview Brown.

36. In response to Sinatra's report of Bulten's First Violations, Defendants did not interview Squires.

37. In response to Sinatra's report of Bulten's First Violations, Defendants did not get a written statement from Sinatra.

38. In response to Sinatra's report of Bulten's First Violations, Defendants did not get a written statement from Floasiu.

39. In response to Sinatra's report of Bulten's First Violations, Defendants did not get a written statement from Trader.

40. In response to Sinatra's report of Bulten's First Violations, Defendants did not get a written statement from Helena.

41. In response to Sinatra's report of Bulten's First Violations, Defendants did not get a written statement from Brown.

42. In response to Sinatra's report of Bulten's First Violations, Defendants did not get a written statement from Squires.

43. Defendants did not investigate Sinatra's report of Bulten's First Violations.

44. Defendant failed to take prompt remedial action following Sinatra's report of Bulten's First Violations.

45. On or about January 8, 2025, Squires extended Sinatra's 90-day review period by 30 days ("First Act of Retaliation").

46. Bulten's handbook stated, "the Company [Bulten] recognizes initial employment periods up to a *maximum* of 90 days depending upon the job position and individual circumstances."

47. Squires' First Act of Retaliation violated Bulten's handbook.

48. Squires' First Act of Retaliation was retaliation for Sinatra's reports of Bulten's First Violations.

49. On or about March 5, 2025, Helena instructed Sinatra not to discuss work related matters with Floasiu.

50. Sinatra had previously discussed Bulten's First Violations with Floasiu.

51. On or about April 12, 2025, Sinatra emailed HR Marie Risberg ("April 12 Email").

52. In the April 12 Email, Sinatra stated he wanted to address "legal liabilities and potential exposure risks and concerns."

53. In the April 12 Email, Sinatra reported a hostile work environment and "professional abuse in the workplace."

54. In the April 12 Email, Sinatra reported retaliation.

55. In the April 12 Email, Sinatra reported that Bulten can be held legally liable for "knowingly perpetuate and/or cause such hostile/toxic working conditions."

56. In the April 12 Email, Sinatra stated Sinatra will seek legal counsel.

57. In the April 12 Email, Sinatra reported National Labor Relations Act (NLRA) violations.

58. Sinatra's April 12 Email was a protected activity.

59. On or about April 12, 2025, Sinatra filed a report with the Securities and Exchange Commission (SEC), outlining Bulten's noncompliance with SOX and GAAP ("SEC Complaint").

60. Sinatra's SEC Complaint was a protected activity.

61. Bulten terminated Sinatra on or about April 14, 2025 ("Sinatra's Termination").

62. Sinatra's Termination was retaliation for Sinatra's report of Bulten's First Violations and the April 12 Email.

63. Bulten terminated Sinatra "due to the current business conditions, sales and forecasts" and "lack of work available."

64. Bulten's purported reason for Sinatra's termination is pretext for Sinatra's protected activities.

65. Defendants' did not proffer a legitimate non-retaliatory reason for terminating Sinatra.

66. On or about August 27, 2024, Bulten sent an offer letter ("Aug 27 Letter").

67. The Aug 27 Letter provides that either Bulten or Sinatra, "may end the employment relationship at any time, for any or no reason, upon thirty (30) days written notice by either" Bulten or Sinatra ("30 Day Notice").

68. Alternatively, the Aug 27 Letter provided that Bulten may terminate Sinatra's employment at any time for cause.

69. The Aug 27 Letter distinguishes between termination without cause and termination for cause.

70. As consideration to Bulten, Sinatra agreed to provide thirty (30) days written notice upon ending the employment relationship.

71. Pursuant to the terms of the Aug 27 Letter, Bulten should have provided 30 Day Notice.

72. Bulten terminated Sinatra without cause.

73. Bulten owed Sinatra 30 Days Notice.

74. Bulten failed to provide Sinatra 30 Day Notice.

75. As of the date of this filing, Bulten has not fulfilled its contractual obligations under the Aug 27 Letter.

76. As of the date of this filing, Bulten has not paid Sinatra his 30 Days Notice.

77. Bulten breached the Aug 27 Letter.

78. As a result of Defendant's conduct, Sinatra suffered, and will continue to suffer damages.

## COUNT I: VIOLATION OF 15 U.S.C. § 78u-6(h)

79. Sinatra restates each and every prior paragraph of this complaint, as if it were fully restated herein.

80. Prior to the Termination, Sinatra filed a report with the SEC, alleging violation of federal securities laws.

81. On or about April 14, 2025, Defendant terminated Sinatra's employment.

82. On or about April 14, 2025, Defendant terminated Sinatra's employment in retaliation for filing a report with the SEC.

83. Defendant violated 15 U.S.C. § 78u-6(h) by retaliating against Sinatra for filing a report with the SEC.

84. As a direct and proximate result of Defendant's conduct, Sinatra suffered and will continue to suffer damages.

## COUNT II: BREACH OF CONTRACT

85. Sinatra restates each and every prior paragraph of this complaint, as if it were fully restated herein.

86. The Aug 27 Letter between Sinatra and Bulten is a contractual agreement.

87. The Aug 27 Letter constituted an offer between by Bulten to provide Sinatra 30 days written notice upon termination without cause.

88. The Offer Letter constituted consideration in the form of 30 days of pay in exchange for Sinatra's obligation to provide 30 days written notice upon the ending of the employment relationship.

89. Bulten breached its contractual agreement with Sinatra.

90. Sinatra suffered damages as a result of the breach.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Nicholas Sinatra respectfully requests that this Court enter judgment in their favor and grant the following relief:

(a) Order Defendant to reinstate Sinatra to one of the positions to which they were entitled by virtue of their application and qualifications, with full back pay and restoration of all lost benefits, and expunge their personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Sinatra for lost wages and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Sinatra's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Samuel B. Robb*
Samuel B. Robb (0099035)
Bella Kneidel (104653)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
3 Summit Park Drive
Suite 200
Independence, OH 44131
Phone: (216) 364-1359
Fax:    (216) 291-5744
Email: sam.robb@spitzlawfirm.com
Isabella.Kneidel@spitzlawfirm.com

*Attorneys For Plaintiff*
*Nicholas Sinatra*

## **JURY DEMAND**

Plaintiff Nicholas Sinatra demands a trial by jury by the maximum number of jurors permitted.

/s/ *Samuel B. Robb*
Samuel B. Robb (0099035)
**SPITZ, THE EMPLOYEE'S LAW FIRM**